UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

RONALD GILLAR and
STEPHANIE GILLAR,

   **Plaintiffs**

 v.

BLUE CROSS/BLUE SHIELD
OF SOUTH CAROLINA,

   **Defendant**

:
:  **CIVIL ACTION NO. 3:17-2128**
:
:   **(JUDGE MANNION)**
:
:
:
:

## **MEMORANDUM**

 Pending before the court are the defendant's motion for summary judgment (Doc. 12) and the plaintiffs' motion for summary judgment (Doc. 19). Based upon the court's review of the record in this action, the defendant's motion will be granted and the plaintiffs' motion will be denied.

 The plaintiffs filed this action pursuant to 29 U.S.C. §1132(a) to recover benefits under an ERISA regulated plan. In due course, the parties filed cross motions for summary judgment. Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute

is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Aetna Cas. & Sur. Co. v. Ericksen, 903 F.Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249; see also Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003); see also Celotex, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is

some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." Celotex Corp., 477 U.S. at 322-23; Jakimas v. Hoffmann–La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007).

The summary judgment standard does not change when the parties have filed cross-motions for summary judgment. Appelmans v. City of Phila., 826 F.2d 214, 216 (3d Cir. 1987). When confronted with cross-motions for summary judgment, as in this case, "the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the summary judgment standard." Marciniak v. Prudential Financial Ins. Co. of America, 184 Fed.Appx. 266, 270 (3d Cir. 2006) (citations omitted) (not precedential). If review of cross-motions reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light

3

of the law and undisputed facts. Iberia Foods Corp. v. Romeo, 150 F.3d 298, 302 (3d Cir. 1998) (citation omitted). See Nationwide Mut. Ins. Co. v. Roth, 2006 WL 3069721, at *3 (M.D. Pa. Oct. 26, 2006) aff'd, 252 Fed.Appx. 505 (3d Cir. 2007).

In reviewing the parties' cross-motions for summary judgment, the following facts are undisputed.[1] The defendant provided a Master Group Contract to Ronald Gillar's employer, United Sporting Companies, which was effective January 1, 2017 ("Contract"). Pursuant to the Contract, Blue Cross administered the Plan of Benefits to employees of United Sporting Companies ("Plan"). The Plan provides coverage for medical benefits but in Section IV specifically delineates a list of benefits that are excluded from coverage under the Plan. One of these specific exclusions from the Plan is:

> **INTOXICATION OR DRUG USE**
>
> Any service (other than Substance Use Disorder Services), Medical Supplies, charges, or losses resulting from a Member being Legally Intoxicated or under the influence of any drug or other substance, or taking some action the purpose of which is to create a euphoric state or alter consciousness. The Member, or Member's representative, must provide any available test results

---

[1]These statements combine the defendant's statement of material facts to which the plaintiffs have responded (Doc. 13, Doc. 17), the plaintiffs' statement of material facts to which the defendant has not responded and are therefore deemed admitted (Doc. 20), and the defendant's supplemental statement of material facts to which the plaintiffs have not responded and are also deemed admitted (Doc. 23).

4

showing blood alcohol and/or drug/substance levels upon request of the Corporation. If the Member refuses to provide these results, no benefits will be provided.

The Plan defines "Legal Intoxication/Legally Intoxicated" as occurring when "the Member's blood alcohol level was at or in excess of the amount established under applicable state law to create a presumption and/or inference that the Member was under the influence of alcohol, when measured by law enforcement or medical personnel."

While the Plan provides that the employer, United Sporting Companies, is charged with the administration of the Plan, as indicated earlier, the Contract between United Sporting Companies and Blue Cross provides that Blue Cross has the final discretionary authority to determine whether plan participants are eligible for benefits. Specifically, the Contract provides:

> 5. <u>Corporation Authority.</u> As claims fiduciary, the Corporation shall have the final discretionary authority to determine the eligibility for Covered Expenses and to construe the terms of the Plan represented by this Plan of Benefits. All decisions by the Corporation in this regard are conclusive and binding, and any judicial review of such a decision shall be conducted under the arbitrary and capricious standard of review with deference given to the Corporation's decision.

Ronald Gillar was a Member covered by the Plan. According to Mr. Gillar's medical records, on or about June 9, 2017, he was found unresponsive lying face down in the middle of a road approximately 100 yards

from an all-terrain vehicle ("ATV"). Having suffered significant injuries[2], the plaintiff was life-flighted to Danville Medical Center ("Danville"). Records show that the trauma transport reported a blood alcohol level of 130 milligrams per deciliter as of 23:48 on June 9, 2017, a level approximately 1.63 times the legal limit for a person to be deemed intoxicated and materially and appreciably impaired under either South Carolina law[3], as made applicable by the Plan, or Pennsylvania law[4], where the accident occurred. The plaintiff remained inpatient at Danville for 22 days.

At some point in time, a claim for benefits was submitted to the defendant on Mr. Gillar's behalf. According to a Notice of Denial dated June 20, 2017, from Medical Management BCBSSC to Geisinger Medical Center, Mr. Gillar's contract did not cover his inpatient admission on June 10, 2017, because of the intoxication exclusion discussed previously. It was indicated that Mr. Gillar could appeal the denial by completing an appeal form which was included with the denial letter.

---

[2]The plaintiff provides that he suffered severe facial fractures, left and right rib fractures, pulmonary contusions, fronto-temporal subdural hemorrhage with right temporal lobe contusions and right temporal subdural hematomas.

[3]S.C. Code of Laws Section 56-5-2933.

[4]75 Pa.C.S. §3802.

6

On July 21, 2017, Mr. Gillar appealed the denial and, on August 4, 2017, the defendant upheld the exclusion of benefits. In denying Mr. Gillar's appeal, in conjunction with his blood alcohol concentration noted at the time of trauma transport, the defendant considered the fact that Mr. Gillar was found face down in the middle of the road having been in an accident involving an ATV. Dr. Lena Bretous, the reviewer on appeal, opined based on her education, training and experience, that with a blood alcohol content level of 130 milligrams per deciliter, Mr. Gillar was severely intoxicated and "all of his mental, physical and sensory functions, including, but not limited to, his judgment, balance, motor coordination and vision were significantly impaired due to alcohol intoxication, this impairment resulted in the member being unable to drive and operate the ATV vehicle and avoid being thrown from the vehicle and found face down over 100 yards from the ATV, thereby causing the member's injuries."[5] The administrative record, however, contains no statement regarding the direct cause of the accident.

At all relevant times, there is no dispute that Mr. Gillar provided all the

---

[5]The plaintiff's counsel denies this statement, in part, arguing that there is no evidence in the record to show that the plaintiff was operating his ATV at the time of his injuries. However, the plaintiff's own allegations in his amended complaint reflect "[o]n June 9, 2017, **while operating an all terrain vehicle**, Plaintiff, Ronald Gillar, was involved in an accident . . ." (Doc. 10, ¶6) (emphasis added). The plaintiff's admission makes his counsel's argument somewhat disingenuous.

7

information necessary to evaluate his claim including authorizations for access to his medical and emergency medical treatment records. Moreover, the defendant has never asserted that Mr. Gillar failed to cooperate, provide information, supply authorizations, statements, records or any other information requested of him. In reviewing the claim for benefits, the defendant provided that it had sufficient information to evaluate Mr. Gillar's claim and his appeal.

As a result of the defendant's denial of coverage, Mr. Gillar provides that he has already incurred medical expenses totaling $518,483.58. Further, Mr. Gillar provides that, without coverage for treatment, his injuries prevented him from returning to his job as a receiver for United Sporting Companies and, as a result, his employment was terminated and he lost the health coverage provided by his employer. Without coverage, Mr. Gillar states that he has been unable and will continue to be unable to pay for future medical care. The plaintiffs are seeking to have the court enter judgment against the defendant declaring that Mr. Gillar is entitled to benefits under the Plan and ordering the defendant to pay Mr. Gillar the requested benefits along with interest and reasonable attorney's fees and costs.

In considering the plaintiffs' claim, §1132(a)(1)(B) of ERISA provides the plaintiff a right of action "to recover benefits due to him under the terms of his

plan." 29 U.S.C. §1132(a)(1)(B). To prevail on a claim under §1132(a)(1)(B), the plaintiff must demonstrate that he has "a right to benefits that is legally enforceable against the plan, and that the plan administrator improperly denied those benefits." Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012) (internal quotations omitted).

The Supreme Court has instructed that courts are to review the denial of benefits challenged under §1132(a)(1)(B) "under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989) (emphasis added). When a plan grants its administrator or fiduciary the discretion to determine eligibility or to construe the plan terms, "we review a denial of benefits under an 'arbitrary and capricious' standard." Orvosh v. Program of Grp. Ins. for Salaried Employees of Volkswagen of Am., Inc., 222 F.3d 123, 129 (3d Cir. 2000).

Here, although the Plan lists the employer, United Sporting Companies, as the plan administrator, the Contract between United Sporting Companies and Blue Cross provides that, in exchange for the premium and applicable fees, "the Corporation [Blue Cross] has agreed to administer this Plan of Benefits and provide the Services set forth in this Contract ("Services")."

Moreover, the Contract identifies Blue Cross as the claims fiduciary and provides that "as claims fiduciary, [Blue Cross] shall have the final discretionary authority to determine eligibility for Covered Expenses and to construe the terms of the Plan represented by this Plan of Benefits." Blue Cross was expressly designated as the fiduciary and given discretionary authority to determine eligibility for covered expenses and construe the terms of the plan, as well as making a final decision on any appeal. Thus, the court finds that the arbitrary and capricious standard of review applies in this case.

The plaintiffs argue that a heightened level of scrutiny applies because there is a structural conflict of interest that exists in light of the fact that Blue Cross both pays benefits due and makes eligibility determinations. However, the standard of review does not change where a structural conflict of interest exists, namely when an insurance company both funds and administers benefits. Metropolitan Life Insurance Co. v. Glenn, 554 U.S. 105 (2008); Davies v. First Reliance Standard Life Ins. Co., 713 Fed. Appx. 129 (3d Cir. 2017) (citing Estate of Schwing v. The Lilly Health Plan, 562 F.3d 522, 525 (3d Cir. 2009)). "Instead, courts reviewing the decisions of ERISA plan administrators or fiduciaries in civil enforcement actions brought pursuant to 29 U.S.C. § 1132(a)(1)(B) should apply a deferential abuse of discretion standard of review across the board and consider any conflict of interest as

one of several factors in considering whether the administrator or the fiduciary abused its discretion." Id.

"An administrator's decision is arbitrary and capricious 'if it is without reason, unsupported by substantial evidence or erroneous as a matter of law.'" Miller v. Am. Airlines, Inc., 632 F.3d 837, 845 (3d Cir. 2011) (quoting Abnathya v. Hoffmann-La Roche, Inc., 2 F.3d 40, 45 (3d Cir. 1993)) (internal quotation marks omitted). The Third Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Fleisher, 679 F.3d at 121.

Under the arbitrary and capricious standard, the "scope of review is narrow and 'the court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits.'" Abnathya, 2 F.3d at 45 (quoting Lucash v. Strick Corp., 602 F.Supp. 430, 434 (E.D. Pa. 1984)). Therefore, the court is limited to considering only the evidence that was before Blue Cross at the time it reviewed and decided Mr. Gillar's claim. Mitchell v. Eastman Kodak Co., 113 F.3d 433, 440 (3d Cir. 1997).

The court concludes in this case that the evidence in the record substantially supports the defendant's finding that Mr. Gillar was legally intoxicated at the time of the accident putting into play the intoxication exclusion. Under the intoxication exclusion, coverage can be denied for any

11

service, medical supplies, charges, or losses resulting from a member being legally intoxicated or under the influence of any drug or other substance. There is no indication in the Plan that the injuries have to result solely from intoxication but only that the injuries be a result of intoxication.

In this case, the plaintiff was found unconscious, laying face down in the middle of a road with a crashed ATV approximately 100 yards away. Upon being life-flighted to Danville, the plaintiff's blood alcohol content was noted by trauma transport to be 130 milligrams per deciliter.[6] An inference of intoxication under both South Carolina law, which applies under the Plan, and Pennsylvania law[7], where the accident occurred, arises at a blood alcohol

---

[6] The plaintiff argues that the blood alcohol content finding at 23:48 on June 9, 2017 does not demonstrate that he was intoxicated at the actual time of his injuries, which is unknown. It defies logic to argue that the plaintiff's blood alcohol level was 1.63 times the legal limit after his injuries while he was unconscious in the middle of the road, but that he was not intoxicated at an earlier time when his injuries were actually incurred.

[7] Citing to Coughlin v. Massiquoi, 170 A.3d 399 (Pa. 2017), the plaintiff argues that, in Pennsylvania, evidence of blood alcohol content for the purpose of establishing negligence is dependent upon corroborating evidence such as the observations of a police officer or other eye witness to describe the behavior and actions of the person including slurred speech, staggered gate, glazed eyes, or odor of alcohol. Initially, the Plan in this case provides that South Carolina law applies, not Pennsylvania law. Moreover, this is not a negligence case. Finally, the court in Coughlin actually rejected the standard requiring independent corroborating evidence of intoxication before blood alcohol content evidence may be admitted emphasizing that in a pedestrian
(continued...)

level of 80 milligrams per deciliter. Thus, Mr. Gillar's blood alcohol content was 1.63 times the legal limit for an individual to be deemed intoxicated and materially and appreciably impaired. Mr. Gillar's initial application for benefits was denied based on the finding that the ATV accident and his resulting injuries were a result of his intoxication. Mr. Gillar appealed the initial denial of benefits based upon the intoxication exclusion. In conjunction with that appeal, Mr. Gillar could have presumably pointed to something other than his intoxication as the cause of the accident and his resulting injuries, if such were the case. No such evidence exists in the record. Given the evidence before her, Dr. Lena Bretous opined within a reasonable degree of medical certainty, based upon her education, training, and experience, that with a blood alcohol content of 130 milligrams per deciliter, Mr. Gillar, including his judgment, balance, motor coordination and vision, were significantly impaired due to alcohol intoxication which resulted in him being unable to operate the ATV and avoid the accident which caused his injuries. Given the circumstances under which the plaintiff was found and his blood alcohol content at the time, and the fact that there is nothing in the record presented by Mr. Gillar that his intoxication was not a cause of his injuries, there is at

---

[7](...continued)
case (which this is not) such evidence may be challenged by cross-examination or with testimony from an expert. Id. at 410.

least some evidence from which a reasonable mind might accept as adequate to support the conclusion that the plaintiff's intoxication was a cause of the ATV accident and his resulting injuries. Therefore, the court finds that the defendant's decision applying the intoxication exclusion to deny Mr. Gillar benefits was not arbitrary and capricious.

In light of the foregoing, the defendant's motion for summary judgment will be granted and the plaintiffs' motion for summary judgment will be denied. An appropriate order shall issue.

                                        s/ *Malachy E. Mannion*
                                      **MALACHY E. MANNION**
                                      **United States District Judge**

**Date: August 30, 2019**

17-2128-01.wpd